# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| USA, | : |
|     Plaintiff, | : |
| v. | :    CRIMINAL ACTION |
| PHUONG LE, | :    NO. 09-cr-719 |
|     Defendant. | : |

**Tucker, J.**                                                                                                                                     **March ____, 2011**

Currently pending before the Court is Defendant's Motion to Suppress (Doc. 31) and the Government's Response in Opposition thereto (Doc. 34). For the reasons discussed below, the Court denies Defendant's motion.

## I. Background

On November 10, 2009, defendant Phuong Le was charged by a federal grand jury sitting in the Eastern District of Pennsylvania in an indictment with one count of conspiracy to commit robbery that interferes with interstate commerce in violation of 18 U.S.C. § 1951(a), two counts of robbery that interferes with interstate commerce in violation of 18 U.S.C. § 1951(a), two counts of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), and aiding and abetting in violation of 18 U.S.C. § 2.[1]

The alleged facts giving rise to Defendant's indictment are as follows.

### A. August 20, 2009 Robbery of Dalia's Grocery Store

On August 20, 2009, at approximately 1:15 a.m., defendants My Nguyen and Phuong Le

---

[1] The indictment also charged co-defendant My Nguyen with one additional count of robbery that interferes with interstate commerce, and one additional count of using and carrying a firearm during and in relation to a crime of violence. Nguyen pled guilty to all charges in the indictment on March 1, 2010.

walked into Dalia's Grocery store located at 1033 S. 8th Street in Philadelphia, Pennsylvania. Working at the store were Je. O. (victim #1), and Ja. O. (victim #2). Nguyen pulled out a gun and both Nguyen and Le demanded money from Je. O. When she would not give them any money, Nguyen fired the gun into the wall. Nguyen then jumped over the counter, and both Nguyen and Le pushed the buttons on the cash register to attempt to open it. After they could not get the register open, Nguyen grabbed about ten packs of cigarettes (worth approximately $60). Nguyen threw the cigarettes to Le, and both of them fled. Nguyen was positively identified in a photo line-up by both employees as the one who shot the gun and jumped the counter.

### B. August 20, 2009 Robbery of 7-Eleven

Later that morning at approximately 3:15 a.m., the defendants entered the 7-Eleven located at 2101 S. 10th Street in Philadelphia, Pennsylvania. Two employees were working in the store. Nguyen approached D.K. (victim #3), the cashier, and placed a drink on the counter. Nguyen then pulled out a gun and demanded money. D.K. thought that Nguyen was joking, and reached for a stick, and then started making a call on his cell phone. At that point, Nguyen fired a shot into the wall. At the same time, another 7-Eleven employee named K.S. (victim #4) was sweeping the floor by the cashier. Nguyen also pointed the firearm at K.S., and both Nguyen and Le ordered the employees around. With D.K. crouching on the ground after the shot was fired, Le and Nguyen ordered D.K. to open the register, telling D.K. that if he did not, Nguyen would shoot him. D.K. placed approximately $100 into a plastic bag. The defendants took the money and fled the store. The defendants were caught on surveillance video robbing the store.

### C. The Search of 2433 8th Street

On August 22, 2009, Philadelphia Police Detectives executed a search and seizure

warrant at 2433 8th Street in Philadelphia, Pennsylvania, where Nguyen was staying. They found Nguyen and Le in addition to the clothing worn during the robberies, 2 unopened packs of Newport cigarettes, and a black Arminius Titan Tiger .38 caliber handgun loaded with six hollow point bullets.

### D. Defendant's Waiver of His Miranda Rights

Le and Nguyen were then arrested and taken to the South Detective Division Police Station, where they were interviewed by Detectives Anthony Vega and Eric Johnson of the Philadelphia Police Department. Prior to the interviews, both Nguyen and Le were provided with written Miranda warnings. After reviewing these warnings with the defendants, the detectives then confirmed that the defendants wanted to waive their rights. The detectives then had the defendants execute written waivers to their rights. Prior to beginning their questioning, the detectives also confirmed in writing that the defendants could read, write and understand the English language, and were not presently under the influence of drugs and/or alcohol. Both defendants then provided full, detailed statements admitting to their roles in the robberies charged in the indictment.

## II. March 9, 2011 Suppression Hearing

On January 27, 2010, Defendant filed a Motion to Suppress (Doc. 31) the statements made to Detective Vega during the interview subsequent to Defendant's arrest on August 22, 2009. The Government filed a Response in Opposition thereto (Doc. 34) on February 6, 2010. The Court held a hearing and oral argument on the motion on March 9, 2011. During the hearing, Defendant testified on his own behalf. The Government presented evidence through the testimony of Detective Anthony Vega. The Government also entered two exhibits: (1) a written

Miranda waiver executed by Defendant on the day of his arrest and (2) a written Investigation Interview Report executed by Defendant on the same day.

### III.  Discussion

Defendant argues that the alleged incriminating verbal and written statements made during his interview with law enforcement agents on August 22, 2009 must be suppressed because the statements were made without the benefit of counsel and Defendant's waiver of his Miranda rights was involuntary.  While there is no contest that the statements were made without the benefit of counsel, the sole issue to be decided is whether Defendant voluntarily waived his Miranda rights.  For the reasons that follow, the Court finds that Defendant's waiver was voluntary and the statements he made to law enforcement should not be suppressed.

Defendant claims that the waiver of his Miranda rights and the statements he made to law enforcement were involuntary because at the time they were obtained, he was severely impaired and under the influence of alcohol and the drug Xanax.  The only evidence presented to support this contention is Defendant's testimony during the suppression hearing.  Defendant testified that he had consumed around ten Xanax pills the day before his arrest.  He also claimed that the police officers that searched him after his arrest did not discover two Xanax pills in his front shirt pocket, and that he managed to consume those pills during his transport to the police station despite having his hands cuffed behind his back.  Defendant testified that when Detective Vega asked him if he was under the influence of drugs or alcohol during the interview, Defendant stated that he was, but Detective Vega wrote "No" on the Investigation Interview Report.  Defendant claims that he rushed through reviewing the Report, he was confused due to his intoxication, and as a result, did not catch the error.

The Government disagrees and argues that Defendant's Miranda waiver and statements were made voluntarily. The Government avers that after Defendant's arrest, Defendant was thoroughly searched for contraband by the police and no Xanax pills were found. The Government further avers that prior to Defendant being interviewed by the police, (1) Philadelphia police detectives provided Defendant with written Miranda warnings; (2) Defendant executed a written waiver of his Miranda rights; (3) and the detectives confirmed in writing that Defendant could read, write, and understand English and was not under the influence of any drugs or alcohol. Detective Vega testified that he had fifteen years of experience on the police force, seven of which he spent working in the narcotics unit. Through his experience and training, he has observed individuals who were under the influence of drugs and alcohol, and Defendant did not exhibit any signs of intoxication. Rather, Detective Vega described Defendant as being "very alert" during the interview. He further testified that Defendant was able to give clear, detailed and lucid responses to various questions and that Defendant provided detailed descriptions of the events surrounding the robbery. Additionally, Defendant was able to clarify his responses when asked; he did not slur his words; and his posture was not out of the ordinary.

Under the landmark holding of Miranda v. Arizona, 384, U.S. 436 (1966), a defendant may waive his rights under Miranda as long as the waiver is given "voluntarily, knowingly, and intelligently." The relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice, rather than intimidation, coercion, or deception. Moran v. Burbine, 475 U.S. 412 (1986). Additionally, the "waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." U.S. v. Siraj, 424 F. Supp. 2d 509, 515 (E.D.N.Y. 2006) (citing Moran,

475 U.S. at 421). If the totality of the circumstances surrounding the interrogation demonstrates that the defendant had the required level of comprehension, a court may properly conclude that the waiver was knowing and intelligent. Id. The government has the burden of proving by a preponderance of the evidence that a confession was voluntarily given. United States v. Swint, 15 F.3d 286, 288-89 (3d Cir.1994).

"While courts have recognized the influence of drugs as one factor in determining voluntariness, involuntariness may not be inferred merely because of drug usage or ingestion. Rather, such usage must have had the effect of overcoming [the defendant's] free will." Ledesma v. Gov't of V.I., 159 F. Supp. 2d 863, 867 (D.V.I. 2001) (citing Colorado v. Connelly, 479 U.S. 157 (1986)). For example, in U.S. v. Andrews, 231 Fed. App'x 174, 177 (3d Cir. 2007), the Third Circuit, affirming the district court's denial of the defendant's motion to suppress, held that there was no "evidence that [the defendant's] will was overborne because he had been smoking marijuana or ingesting Xanax more than thirteen hours prior to his confession." The court reached this conclusion in part based on a detective's testimony that, during the police interview, the defendant "did not exhibit any of the symptoms of someone who was under the influence of marijuana and Xanax. Rather, [the detective] found [the defendant] to be alert and lucid." Id. The detective further testified that the defendant "spoke clearly, answered the questions directly, and provided specific details regarding his participation in the armed robberies." Id. See also U.S. v. Adamson, 2008 WL 167299, at * 7 (E.D. Pa. Jan. 16, 2008) (concluding that despite defendant's ingestion of morphine and Percocet, defendant voluntarily waived his Miranda rights because, during his interrogation, the defendant was able to provide coherent explanations to the detective's questions, "never appeared sleepy or

confused, was able to understand and answer questions asked of him, did not mumble or slur his speech, and never complained that he felt unwell.").

Moreover, courts in this district have held that a self-supporting claim of intoxication, standing alone, is insufficient to prove that statements made to police were involuntary. See e.g., U.S. v. Briggs, 2008 WL 1745661 (E.D. Pa. Apr. 14, 2008). For example, in Briggs, Defendant filed a Motion to Suppress statements made to the police on the ground that his waiver of his Miranda rights was involuntary because he was intoxicated. Id. at * 5. The Court denied Defendant's motion and reasoned that

> *. . . the only evidence of intoxication in this case was defendant's self-serving testimony to that effect.* Countering defendant's testimony was the testimony of two FBI agents, Special Agents Vincent and Lash, who testified they observed defendant and saw no evidence of any effects of any drug use or alcohol consumption. Under these circumstances, the Court finds no credible evidence upon which to conclude that defendant was unable to give a valid waiver of his Miranda rights due to intoxication.

Id. at *15 (emphasis added).

As an initial matter, the Court, having observed the demeanor of the government's witness, Detective Vega, at the March 9, 2011 suppression hearing, concludes that the testimony of Detective Vega was credible and consistent. In contrast, the Court finds that Defendant's testimony lacked credibility. Based on the credibility of the government's witness and the other evidence presented, the Court finds the government's evidence to be more believable than the Defendant's evidence.

Here, like the defendant in Briggs, the only evidence supporting Defendant's claim that he was under the influence of drugs or alcohol at the time of his interview is his self-serving statement that he was intoxicated by Xanax. This claim of intoxication, however, belies all of

the evidence produced during the suppression hearing.  First, in response to question No.6 on the Investigation Interview Report, "Are you presently under the influence of drugs and/or alcohol?", Defendant answered "No".  Moreover, like the defendants in <u>Andrews</u> and <u>Adamson</u>, Defendant did not exhibit any behavior indicating that he was under the influence of drugs or alcohol.  To the contrary, Defendant was alert and talkative, he did not talk with slurred speech, and his posture was ordinary.  That Defendant was also able to provide detailed and lucid descriptions of the events surrounding the robberies as evidenced by his responses on the written Investigation Interview Report is further proof that Defendant's free will was not overcome by the influence of drugs or alcohol.  Finally, the Court finds Defendant's account of how he consumed two Xanax pills right before his interview while in police custody with his hands cuffed behind his back to be completely preposterous.  Upon consideration of the totality of the circumstances, the Court finds that the Government has met its burden of proving that Defendant was not under the influence of drugs or alcohol at the time of his Miranda waiver and interview to the point where he was unable to act according to his own free will.  Defendant's waiver of his Miranda rights and subsequent statements to the police were thus made knowingly, intelligently, and voluntarily.

**IV.  Conclusion**

For the foregoing reasons, Defendant's Motion to Suppress is denied.  An appropriate Order follows.